# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**MIZELL E. EWING III,**

      **Petitioner,**

**v.**                                    **Case No.  2:13cv56**
                                               **(Judge Bailey)**

**ANN MARY CARTER, Warden,**

      **Respondent.**

## REPORT AND RECOMMENDATION

The petitioner, Mizell Ewing, initiated this habeas action pursuant to 28 U.S.C. § 2241on August 12, 2013. On August 22, 2013, the petitioner paid the required $5 filing fee.  On September 9, 2013, in compliance with a Notice of Deficient pleading, the petitioner filed his petition on this Court's approved form.  On September 17, 2013, the respondent was directed to show cause why the petition should not be granted.  The respondent filed a Motion to Dismiss or for Summary Judgment and Response on October 21, 2013.  On October 23, 2013, a <u>Roseboro</u> Notice was issued.  On November 15, 2013, the petitioner filed a response. Accordingly, this case, before me for a report and recommendation pursuant to LR PL P § 2, <u>et</u> <u>seq.</u>,  is ripe for review

### I.  Factual History

The petitioner pleaded guilty to Count 1 of an indictment returned against him in the United States District Court for the Northern District of Ohio. On June 6, 2009, the petitioner was sentenced to imprisonment for a total term of 78 months to be followed by three years of supervised release. The petitioner was also ordered to pay a $100.00 assessment and a $1,000.00 fine. The lump sum payment of $1100.00 was due immediately. (Doc. 18-4). On July 25, 2012, the petitioner agreed to participate in the BOP's Inmate Financial Responsibility Program ("IFRP") by making a $25

payment every month. On April 3, 2013, the petitioner requested to withdraw from the IFRP. As of

that date, the petitioner had paid the $100 assessment and owed a balance of $470 toward the $1000

fine. Because the petitioner had received $1000 between October 2012 and April 2013, it was

determined that he was able to make payments towards his court-ordered obligations if he elected

to do so. Therefore, he was placed in refusal status. On March 4, 2013, the petitioner's unit team

recommended him for a period of four to five months in a Residential Re-entry Center ("RRC"). His

current projected release date is October 7, 2014.

## II. The Petition

In his original petition, the petitioner called into question his Unit team's handling of his

request for placement in a RRC. It appears that the petitioner believes that they considered his

request under the Second Chance Act as opposed to considering it under 18 U.S.C. § 3621(b). When

the petitioner filed his petition on the court-approved form, he made no mention of his RRC

placement. Instead, he takes exception to his placement in IFRP refusal status and asks this Court

to order the Bureau of Prisons to lift its sanction against him. In addition, he requests that all monies

collected from him through the IFRP be returned to him with full interest. In addition, he has a

pending Motion for Leave to Amend (Doc. 15), in which he seeks "recovery of loss [sic] wage's

[sic] plus interest as well as 100% granted all privileges that where [sic] lost due to IFRP sanction's

[sic].

## III. The Response

In her response, the respondent has addressed both of the petitioner's claims. First, the

respondent argues that the IFRP does not violate the petitioner's rights. Second, the respondent

argues that the BOP did not abuse its discretion with regard to RRC review and referral of the

petitioner's case pursuant to the Second Chance Act. In addition, the respondent argues that the petition, as it relates to RRC placement, is moot because the petitioner has received the relief he seeks – consideration of his halfway house placement without relying on the Office of Legal Counsel (OLC) Opinion.[1]

## IV. **The Reply**

In his reply to the <u>Roseboro</u> Notice, the petitioner contends that the BOP did not make full disclosure of the sanctions that could be placed again him for failing to participate in the IFRP, which is a voluntary program. Therefore, the petitioner maintains that his "contract" with the BOP regarding participation in the IFRP is void for not meeting all aspects of a valid contract. Moreover, the petitioner claims that he has been making payments directly to the Court, which have been accepted. The petitioner also argues that his request for RRC consideration was made pursuant to 18 USC § 3621(b) not the Second Chance Act.

## V. **Standard of Review**

## A. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

---

[1]The undersigned notes that the respondent does not explain what the OLC Opinion is. However, the undersigned believes she may be referring to a 2002 memo. Prior to December 2002, the BOP had a policy of placing prisoners in a CCC for up to six months, regardless of the total length of the inmate's sentence. <u>See</u> BOP Program Statement 7310.04. However on December 13, 2002, the Office of Legal Counsel for the Department of Justice issued a memorandum stating that this practice was inconsistent with 28 U.S.C. § 3624(c) which, in its opinion limited an inmate's placement in a CCC to the lessor of six months or ten percent of the inmate's sentence. This memo is now meaningless because the Second Chance Act extended the maximum time for pre-release placement to twelve months, and the BOP is consistently applying the five (5) factor test and has eliminated a categorical approach to pre-release placement.

Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); *see also Martin,* 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citations omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. *Id.*

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon , 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be

drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Industrial Co. v. Zenith Radio *Corp.,* 475 U.S. 574, 587-88 1986).

## VI.  Analysis

### A. Inmate Financial Responsibility Program

The IFRP was enacted to assist an inmate  "to meet his or her legitimate financial obligations"[2]  and applies to "all inmates in federal facilities."  28 C.F.R.  § 545.10.  "The IFRP program serves valid penological interests and is fully consistent with the Bureau of Prisons' authorization, under the direction of the Attorney General, to provide for rehabilitation and reformation."  Johnpoll v. Thornburgh, 898 F. 2d 849, 851 (2d Cir. 1990).  Further, while the petitioner's failure to comply with the IFRP can have negative consequences on the inmate, see 28 C.F.R. § 545.11(d), compelled participation in the program neither is punitive in nature nor violates due process because it is reasonably related to the legitimate government objective of rehabilitation. Johnpoll, 898 F. 3d  at 851.  Therefore, the IFRP has been "uniformly upheld against constitutional attack."  McGhee v. Clark, 166 F. 3d 884, 886 (7th Cir. 1999).

The Fourth Circuit Court of Appeals has held that "a district court may not delegate its authority to set the amount and timing of fine payments to the Bureau of Prisons or the probation officer." United States v. Miller, 77 F.3d 71, 78 (4th Cir. 1996).  In Miller, the district court had ordered Miller to "make payments toward the $3,000 fine and the fifty-dollar restitution at such times and in such amounts as the Bureau of Prisons and/or the Probation Office may direct." The Fourth Circuit determined that the district court had improperly delegated its authority to the BOP and vacated the portion of Miller's sentence regarding the fine and restitution.  However, where the

---

[2]  Fines are inmate financial obligations.  28 C.F.R. § 545.11(a)(3).

"court does not specify the term of payment or allow payments in installments, the restitution is payable immediately." United States v. Johnson, 48 F.3d 806, 808 (4th Cir. 1995); see also Miller 77 F.3d at 77-78 (noting that 18 U.S.C. § 3572(d) provides that a "person sentenced to pay a fine or other monetary penalty shall make such payment immediately, unless, in the interests of justice, the court provides for payment on a date certain or in installments")

In this case, the sentencing court specifically noted that the petitioner's aggregate criminal monetary penalties of $1100 were due immediately. (Doc. 18-4, p. 6). Because the amount and timing of the petitioner's monetary penalties were set by the sentencing court, and not delegated to the BOP, Miller is inapplicable to the petitioner's situation. See McGhee v. Clark, 166 F.3d 884 (7th Cir. 1998).[3]

In addition, the petitioner cannot show that he was improperly placed on IFRP refusal status in April of 2013, when he requested to withdraw from the IFRP. On July 25, 2012, the petitioner signed a contract and agreed to participate in the program, making monthly payments of $25 beginning in September of 2012. (Doc. 18-5). In April of 2013, the petitioner requested to withdraw from the IFRP program. Between October 12, 2012 and April 2013, the petitioner received $1000.00 in his prisoner trust account. Accordingly, the petitioner had the ability to make his agreed upon monthly payments of $25, and he was properly placed in refusal status. The fact that the petitioner has made two payments directly to the sentencing court outside of his IFRP contract is irrelevant.

---

[3]To the extent the petitioner cites a number of cases from the 9th Cir. in support of his position that ordering immediate payment and leaving it to another agency, like the BOP, to actually set the payment schedule is unlawful, the same is not binding precedent on this Court, and is, in fact, in direct contradiction to the position of the 4th Cir. See United States v. Caudle, 261 Fed. Appx. 501 (4th Cir. Jan. 10, 2008); Coleman v. Brooks, 133 Fed. Appx. 51 (4TH Cir. May 24, 2005).

The BOP determined that the petitioner's IFRP payment should be $25 monthly.[4] The petitioner

failed to make that payment through the IFRP. The petitioner chose not to utilize the IFRP and

therefore voluntarily lost any advantage he may have had through participation in the program. To

the extent that he challenges those sanctions, as previously noted, compelled participation in the

IFRP neither is punitive in nature nor does it violate the due process clause because it is reasonably

related to the legitimate government objective of rehabilitation. Johnpoll, 898 F. 3d at 851; see also

Weinberger v. United States, 268 F.3d 346, 360 (6th Cir. 2001); McGhee v. Clark, supra; James v.

Quinlan, 866 F.2d 627, 629 (3rd Cir. 1989); Dorman v. Thornburgh, 955 F.2d 57, 58-59 (D.C. Cir.

1992). Moreover, the "contract" he signed on July 25, 2012, specifically acknowledged that he had

been advised by a staff member regarding the potential consequences of a refusal on his part to

participate in the IFRP. (Doc. 23-8). Because the petitioner has not established that his IFRP refusal

status designation was improper, he is not entitled to the relief he seeks in his Motion for Leave to

Amend, i.e., recovery of lost wages plus interest and a return of his lost privileges.

## B. Residential Re-Entry Center

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701 and 702,

"[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action with the meaning of a relevant statute is entitled to judicial review thereof," except

to the extent that a statute precludes judicial review. In this case, the petitioner challenges the length

of time the BOP has deemed appropriate for him in an RRC prior to his release.

The statute providing for the placement of inmates, 18 U.S.C. § 3621, provides as follows:

_____

[4]The petitioner's criminal docket sheet indicates that  he made a payment of $5 on
January 16, 2014, and again on March 3, 2014. See 4:08CR274-2 available on PACER.

The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau deems to be appropriate and suitable, considering –

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoners;

(4) any statement by the court that imposed the sentence -

(A) concerning the purpose for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994 (a) (2) of title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner that the Bureau determines has a treatable condition of substance addiction or abuse. Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person.

18 U.S.C. § 3621(b). This statute grants the BOP authority to designate an inmate's placement in an appropriate facility, including an RRC. The BOP must consider the five factors set forth in the statute in making that designation, but is not restricted as to when, during an inmate sentence, it makes a designation.

A second statute, 18 U.S.C. § 3624, obligates the BOP to consider an inmate's RRC eligibility toward the end of his sentence and limits the portion of an inmate's sentence that he may spend in an RRC. In 2007, section 3624 was amended by the Second Chance Act to extend from six months to twelve months the portion of the sentence that may be served in such a program. Section 3624 now provides:

> The Director of the Bureau of prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).

The placement of an inmate in an RRC during the final portion of his sentence is sometimes referred to as "pre-release RRC placement," as opposed to the placement of an inmate in an RRC at any other point during his sentence, pursuant to Section 3621(b), which can be distinguished as "any time RRC placement." Regardless of whether one speaks of pre-release placement or any time RRC placement, because such a determination involves a decision regarding an inmate's place of imprisonment, the Director must necessarily consider the five factors enumerated in 18 U.S.C. § 3621(b), as outlined previously in this Report. However, pursuant to 18 U.S.C. § 3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D.Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an

RRC, is not reviewable by this Court.  See Lyle v. Sivley, 805 F.Supp. 755, 760 (D.Ariz. 1992).

However, even where judicial review under the APA is specifically excluded by statute, the  court

may still review whether there is clear evidence of unconstitutional conduct or evidence that the

agency acted outside the scope of its authority.  Webster v. Doe, 486 U.S. 592 (1988); Turner v.

Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler,

966 F.Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular

institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he

will be confined  in a particular prison.  Olim v. Waukinekona, 461 U.S. 238 (1983).  Thus, because

the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the

decision whether to make such placement is clearly a matter of prison management within the

knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear

constitutional violation occurred.

In this particular case, it appears that sometime prior to February of 2011, the petitioner

requested RRC placement for the duration of his sentence.  (Doc. 1-5). At that time, the petitioner

was incarcerated at FCI Elkton.  A grievance response from the Regional Director indicated that his

request for extended RRC placement would be fully reviewed on an individual basis in connection

with his next scheduled Program Review. (Id.).  It also appears that the plaintiff was first admitted

to the custody of the BOP on January 15, 2009. (Doc. 18-3, p.2).  Therefore, when the petitioner

began requesting placement in a RRC, he had served approximately 24 months of his  sentence, and

had approximately forty-four months remaining until his projected release date.  (Doc. 18-3, p.2).

It is not clear whether the petitioner had his next scheduled Program Review before he was

transferred from FCI Elkton in November of 2011.(Doc. 18-3, p.1).

In November of 2012, the petitioner, who was then incarcerated at FCI Morgantown, again requested that he be considered for transfer to a RRC for the duration of his sentence pursuant to 18 U.S.C. § 3621(b). In addition, the petitioner requested that if he did not meet the "criteria," that he be shown what to do to meet his request. (Doc. 1-7, p. 3).The petitioner was advised that he would be reviewed for RRC placement 17-19 months prior to his release date, and he was further advised that all inmates are automatically reviewed under the Second Chance Act with the five factor review. (Doc. 1-7, p.4). The petitioner appealed this decision and exhausted his administrative remedies by virtue of the fact that Central Office failure to respond by June 15, 2013.[5]

While the administrative process was ongoing, the petitioner's Unit Team reviewed him for RRC placement, and on March 4, 2013, recommended that he placed in an RRC for 121-150 days. In making this recommendation, the Unit Team noted that:

   (1) there was an RRC in his release area;

   (2) offense indicated eligibility for RRC;

   (3) history and characteristics: will need to secure employment;

---

[5]"If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received.  Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals.  If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18. In this particular case, the appeal was received on April 16, 2013, and the reply, with a twenty (20) day extension was due on June 15, 2013.

(4) No statement (J&C) by the sentencing district; and

(5) No pertinent policy by the sentencing commission.

(Doc. 1-7, p. 1).

As previously noted, whether considering "any time RRC placement," or "pre-release placement," the BOP must consider the five factors set for in 18 U.S.C. § 3621(b). The petitioner's Unit Team did consider those factors in recommending placement for 121-150 days. The undersigned recognizes that the petitioner was seeking "any time release," while the Unit Team clearly was considering him for pre-release placement pursuant to the Second Chance Act. However, under the Second Chance Act, the Unit Team could have recommended him for RRC placement of up to one year. Given that they recommended the petition for a maximum of five (5) months, it seems improbable that they would have recommended him for RRC placement for the duration of his sentence, which would have been approximately nineteen (19) months. Therefore, while the BOP may have failed to consider, or perhaps even appreciate, that the petitioner was seeking RRC placement under 18 U.S.C. § 3621(b) and not the Second Chance Act, it would appear futile to grant the petition and direct the BOP to consider the petition for RRC placement for the duration of his sentence which is now approximately seven months.

## VII.  Recommendation

For the foregoing reasons, it is the recommendation of the undersigned that the respondent's Motion to Dismiss or, in the alternative, Motion for Summary Judgment  (Doc. No. 17) be **GRANTED** and the petition be **DISMISSED WITH PREJUDICE.** It is further recommended that the petitioner's Motion for Leave to Amend (Doc. 15) be **DENIED** because it asks for relief which is clearly not available, and the petitioner's Motion/Request to Have a Ruling Expedited (Doc. 25)

13

be **DENIED AS MOOT**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985): Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet and to counsel of record by electronic means.

DATED: March 13, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE