**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS**

**MIZELL E. EWING III**,

    Petitioner,

**v.**

                                                         Civil Action No. 2:13-CV-56
                                                         (BAILEY)

**ANN MARY CARTER**, Warden,

    Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge John S. Kaull. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Kaull for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Kaull filed his R&R on March 13, 2014 [Doc. 26], recommending that this Court grant Respondent's Motion to Dismiss/Motion for Summary Judgment [Doc. 17], deny as moot petitioner's Motion/Request to Have a Ruling Expedited [Doc. 25], and dismiss petitioner's § 2241 petition [Docs. 1, 8] with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is timely made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the

1

findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order.  28 U.S.C. § 636(b)(1); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Here, objections to Magistrate Judge Kaull's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  The petitioner timely filed his Objections [Doc. 28] on March 28, 2014.  Accordingly, this Court will conduct a *de novo* review of the portions of the magistrate judge's R&R to which the petitioner objects.  The remainder of the R&R will be reviewed for clear error.

I. <u>**Background**</u>

Petitioner Ewing Mizell, presently incarcerated at FCI Morgantown, complains that Bureau of Prisons ("BOP") officials violated his constitutional rights by (1) placing him in "refusal" status concerning the BOP's Inmate Financial Responsibility Program ("IFRP") and (2) considering him for Residential Reentry Center ("RRC") placement under 18 U.S.C. § 3624(c) rather than under 18 U.S.C. § 3621(b).  Petitioner's claims are without merit.

A. **Inmate Financial Responsibility Program**

On January 6, 2009, the United States District Court for the Northern District of Ohio sentenced petitioner to 78 months' incarceration and ordered petitioner to pay a total of $1,100.00 in fines and fees, due in full immediately.  [Doc. 18-4 at 1, 6]. Petitioner was designated to FCI Morgantown on July 24, 2012.  [Doc. 18-3 at 1].  On July 25, 2012, petitioner signed an Inmate Financial Plan form in which he agreed to participate in the

2

IFRP by making a $25.00 monthly payment toward his $1,100.00 obligation. *See* [Doc. 18-5]. On April 3, 2013, however, petitioner requested that he be withdrawn from the IFRP. [Doc. 18-1 at ¶ 12]. As of that date, $470.00 of petitioner's obligation remained unpaid. *Id.* After reviewing petitioner's financial account and determining that petitioner had the ability to continue making payments if he wished to do so, BOP placed petitioner in IFRP "refusal" status. Placement in "refusal" status denies a prisoner certain privileges. *See* 28 C.F.R. § 545.11(d) (listing the privileges denied).

### B. Residential Reentry Center Placement

Petitioner began serving his sentence at FCI Elkton on January 15, 2009. *See* [Doc. 18-3 at 2]. At some point prior to February 1, 2011, petitioner submitted an administrative request for "immediate" placement in an RRC. *See* [Doc. 1-5]. Petitioner's request was denied by the Warden and denied again on appeal to the Regional Director, who informed petitioner that his request for extended RRC placement would be fully reviewed during petitioner's next scheduled Program Review. *See* [Doc. 1-5]. It is not clear from the record whether that Program Review took place before petitioner was transferred from FCI Elkton to FCI Morgantown on November 10, 2011. [Doc. 18-3 at 1].

On November 5, 2012, petitioner submitted an Inmate Request to FCI Morgantown staff, requesting that he be transferred to an RRC "for the duration of [his] sentence pursuant to 18 U.S.C. [§] 3621(b) and its 5 factors." [Doc. 1-7 at 2]. On November 27, 2012, a BOP case manager advised petitioner that he would be reviewed for RRC placement 17–19 months prior to his scheduled release date and that "[a]t that time and only at that time will RRC placement be discussed." *Id.* at 4. Petitioner appealed to the

Warden on December 17, 2012, *see id.* at 5, who denied the appeal on December 27, 2012, *id.* at 6; on February 11, 2013, petitioner appealed the Warden's decision to the Regional Director, who denied the appeal on March 26, 2013. *Id.* at 10. Finally, petitioner exhausted his administrative remedies by appealing to the BOP General Counsel's office, which effectively denied petitioner's appeal by failing to respond within the time allotted for a response. *See id.* at 14.

During the pendency of petitioner's administrative appeals, petitioner's Unit Team reviewed him for RRC placement, and on March 4, 2013, recommended that petitioner be placed in an RRC for 121–150 days. *Id.* at 1. In making its recommendation, the Unit Team noted that petitioner "was reviewed under 18 U.S.C. [§] 3621(b)" and found that (1) an RRC existed in petitioner's release area; (2) petitioner's offense indicated eligibility for RRC placement; (3) petitioner would need to secure employment; (4) the sentencing court made no relevant statement; and (5) no pertinent sentencing commission policy existed. Petitioner's projected release date is October 7, 2014. [Doc. 18-2 at 1].

On August 12, 2013, petitioner initiated this action by filing his 28 U.S.C. § 2241 habeas petition in this Court. *See* [Doc. 1].

**II.     Discussion**

Petitioner argues that the BOP violated his constitutional rights by (1) failing to inform petitioner that refusing to participate in the IFRP would have negative consequences and (2) refusing to consider him for "any time" RRC placement pursuant to 18 U.S.C. § 3621(b), instead considering him only for "pre-release" RRC placement under 18 U.S.C. § 3624. Magistrate Judge Kaull's R&R rejected both arguments. Petitioner argues in his

4

Objections that Magistrate Judge Kaull "failed to address" various supporting grounds, alleged facts, and legal arguments raised by petitioner. As set forth below, petitioner's Objections must be overruled.

   A.   **Inmate Financial Responsibility Program**

Petitioner raises two arguments related to the IFRP in his Objections. First, he contends that the IFRP is governed by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p, and that the BOP is unlawfully acting as an unlicensed third-party debt collector. Petitioner is incorrect. The FDCPA does not apply to the IFRP. *See, e.g.*, **Jordan v. Holt**, 488 Fed. Appx. 587, 588 n.2 (3d Cir. Nov. 14, 2012) (unpublished) (citing **Geiger v. Fed. Bureau of Prisons**, 487 F. Supp. 2d 1155, 1159–60 (C.D. Cal. 2007)) ("We . . . agree with the District Court's determination that the [FDCPA] does not apply to the IFRP."). Court-ordered restitution does not fall within the FDCPA's definition of "debt." *See* 15 U.S.C. § 1692a(5) ("The term 'debt' means any obligation . . . of a consumer to pay money *arising out of a transaction* in which the money, property, insurance, or services which are the subject of the transaction are *primarily for personal, family, or household purposes* . . . ." (emphasis added)). Even if court-ordered restitution fell within the definition of "debt," the BOP does not fall within the FDCPA's definition of "debt collector." *See id.* at § 1692a(6)(C) ("The term [debt collector] does not include . . . any officer or employee of the United States . . . to the extent that collecting or attempting to collect any debt is in the performance of his official duties.").

Second, petitioner contends that because he was denied certain privileges by refusing to participate in the IFRP, participation in the IFRP is effectually "mandatory" and

5

that "forcing" him to participate in the IFRP is extortion. This argument is wholly without merit, and has been uniformly dismissed by the federal courts. *See, e.g.*, **United States v. Lemoine**, 546 F.3d 1042, 1046 (9th Cir. 2008) (holding that prisoner had no preexisting right to receive any benefit conditioned upon his participation in the IFRP, and the consequences BOP imposes upon prisoners who refuse to participate are reasonably related to legitimate penological interests and infringe no constitutionally protected interests); **Tisthammer v. Walton**, 542 Fed. Appx. 521, 522–23 (7th Cir. Oct. 25, 2013) (unpublished) (citing **United States v. McKnight**, 665 F.3d 786 (7th Cir. 2011) ("[B]y denying privileges to inmates who opt out of the IFRP, the [BOP] does not improperly compel them to participate."); **Williams v. Farrior**, 334 F. Supp. 2d 898, 903–04 (E.D. Va. 2004) (holding that the IFRP does not violate due process).

Third, petitioner argues that the IFRP "contract" he signed is "void" because he was never informed of the consequences which would flow from refusing to participate in the IFRP. This argument lacks merit for two reasons. First, the "Inmate Financial Plan" [Doc. 18-5] document petitioner signed is not a "contract," as it evinces no promise made or obligation assumed by BOP in exchange for petitioner's participation in IFRP. *See, e.g.*, **Shelton v. United States**, 539 Fed. Appx. 1011, 1013–14 (Fed. Cir. Sep. 11, 2013) (unpublished) (rejecting prisoner's argument that IFRP participation form was a contract). The document concerns only petitioner's understanding of IFRP's requirements and his promise to remit payments according to the specified schedule.

Second, by voluntarily signing the document, petitioner acknowledged that "[a] staff member . . . provided [him] with information regarding the potential consequences of a

refusal on [his] part to participate" in the IFRP.  *See* [Doc. 18-5].  Even if petitioner's voluntary acknowledgment that he received such information was somehow invalid, his claim would still lack merit, as the consequences of refusal to participate in IFRP do not give rise to constitutionally cognizable claims.  ***Farrior***, 334 F. Supp. 2d at 903–04.

Petitioner's objections related to his IFRP claims are overruled.

### B.    Residential Reentry Center Placement

Petitioner raises two objections to Magistrate Judge Kaull's disposition of his RRC placement-related claims: petitioner argues that BOP violated his rights (1) "when they refused to do the [RRC placement] consideration until [he] was 17–19 months prior to release" or (2) when BOP officials, including the Warden, allegedly failed to consider the five factors set forth in § 3621(b) when considering him for RRC placement.  Both arguments fail.

Inmates have no constitutionally protected interest in being confined to a particular penal institution, including an RRC; thus, the BOP is not obligated to allow an inmate to serve *any* of his sentence in an RRC.  *See, e.g.*, ***Gallegos-Hernandez v. United States***, 688 F.3d 190, 195 (5th Cir. 2012); *cf.* ***Meachum v. Fano***, 427 U.S. 215, 225 (1976) ("Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized . . . .  That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated").  The BOP does, however, have discretion to place an inmate in an RRC for all or part of his sentence.

Two statutory provisions govern the BOP's authority to place inmates in RRCs: 18

U.S.C. § 3621(b) and 18 U.S.C. § 3624(c). Section 3621(b) *allows*, but does not require, the BOP to consider an inmate for placement in an RRC at any time ("any time" placement). *See* 18 U.S.C. § 3621(b) (BOP "*may* designate any available penal or correctional facility," including an RRC, as the inmate's place of imprisonment, and "*may* at any time . . . direct the transfer of a prisoner from one . . . correctional facility to another"). Section 3624(c), in contrast, *requires* the BOP to consider an inmate for placement in an RRC as the inmate's sentence nears its end ("pre-release" placement). *See id.* at § 3624(c)(1) (BOP "*shall*, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (*not to exceed 12 months*), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include [an RRC].") (emphasis added).

When an inmate is considered for either "any time" or "pre-release" RRC placement, the BOP is required to consider five factors in making its placement determination:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence —

    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

    (B) recommending a type of penal or correctional facility as

8

appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b); *see also* **Jaworski v. Gutierrez**, 509 F. Supp. 2d 573, 583 (N.D. W.Va. 2007) (holding that § 3621(b) requires the BOP to consider each of the five factors before making placement and transfer determinations).

As is the case here, RRC placement reviews typically take place approximately 17–19 months prior to an inmate's scheduled release date, in order to ensure that the inmate may be considered for the maximum of twelve months' pre-release placement pursuant to § 3624(c). Inmates, however, may make such requests before that window, and in a memorandum dated November 14, 2008, the BOP provided additional guidance to BOP staff responding to such early requests.[1] The memo noted that inmates "are legally eligible to be placed in an RRC at any time during their prison sentence" and noted that all such inmate requests required individualized consideration under the five § 3621(b) factors. The memo further stated that

> [s]taff cannot, therefore, <u>automatically</u> deny an inmate's request for transfer to a[n] RRC. . . . In other words, staff <u>cannot</u> say that an inmate, whatever the circumstances, is <u>automatically ineligible</u> for transfer to a[n] RRC. . . .
>
> There is no need, however, to immediately perform the individualized review

---

[1] Kathleen M. Kenney & Joyce K. Conley, *Memorandum for Chief Executive Officers: Inmate Requests for Transfer to Residential Reentry Centers*, Federal Bureau of Prisons (Nov. 14, 2008), *cited in* **Ciocchetti v. Wiley**, No. 09-CV-01175, 2009 WL 2223053, at *3 (D. Colo. Dec. 22, 2009) (available on PACER, Doc. 9-2).

at the moment [the inmate request] is submitted. Rather, the inmate should be informed that his/her request will be fully reviewed in conjunction with the next scheduled Program Review.[2]

Here, when petitioner made his first request for RRC placement while incarcerated at FCI Elkton, he had approximately 44 months remaining until his projected release date. Petitioner was informed, in accord with the statement of policy set forth by the November 14 memo, that his request for placement would be fully reviewed during his next scheduled Program Review.

When petitioner made his second request for RRC placement, however, it appears to this Court that BOP staff failed to follow its own guidance as set forth in the November 14 memo. The BOP case manager's statement that "[a]t that time and only at that time," 17–19 months prior to petitioner's release, "will RRC placement be discussed," was, in essence, an automatic denial of petitioner's request. BOP staff should have informed petitioner that his request would be considered at his next scheduled Program Review, as occurred at FCI Elkton after petitioner made his first request.

However, this Court agrees with Magistrate Judge Kaull's conclusion that any error committed by BOP in automatically denying petitioner's second early request was harmless. During the pendency of petitioner's administrative appeals, petitioner's Unit Team actually considered petitioner for pre-release RRC placement pursuant to § 3624(c), and it is clear that BOP staff considered the five § 3621(b) factors as applied to petitioner at that time. *See* [Doc. 18-2 at 1 ¶ 12]. Although petitioner's Unit Team could have

---

[2] *See supra* note 1 (emphasis in original).

recommended petitioner for up to twelve months of placement following the § 3621(b) review, the Unit Team instead recommended that petitioner be placed in an RRC for only 121–150 days, or 4–5 months. *Id.* at 1 ¶ 3. This Court can discern no reason why earlier consideration of the § 3621(b) factors would have changed that result.

Petitioner thus fails to state a viable claim for relief based upon his RRC placement.

## **CONCLUSION**

Consequently, Magistrate Judge Kaull's Report and Recommendation **[Doc. 26]** is hereby **ORDERED ADOPTED**, and petitioner's Objections **[Doc. 28]** are **OVERRULED**. Respondent's Motion to Dismiss/Motion for Summary Judgment **[Doc. 17]** is hereby **GRANTED**, and petitioner's Motion/Request to Have a Ruling Expedited **[Doc. 25]** and Motion for Leave to Amend **[Doc. 15]** are **DENIED as moot**.

Accordingly, this Court hereby **DENIES** and **DISMISSES with prejudice** the petitioner's § 2241 petition **[Docs. 1, 8]** and this matter is **ORDERED STRICKEN** from the active docket of this Court. As such, this Court **DIRECTS** the Clerk to enter judgment in favor of the respondent.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the pro se petitioner.

**DATED:** April 17, 2014.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE